ALICE MILLER *vs.* CITY OF ST. PAUL.

January 27, 1888.

**Municipal Corporations—Duty to Light Streets—Defective Streets.—** A city is under no obligation to light its streets, and its mere neglect to do so is not a ground of liability, unless the charter expressly imposes the duty. But inasmuch as a street partially obstructed or out of repair may be reasonably safe if lighted, but dangerous if unlighted, the fact that it was or was not lighted may be material upon the question of negligence.

**Same—Step from Sidewalk to Street Crossing.—** The existence of a step, properly constructed, from a sidewalk to a street crossing, is not a defect, so as to render a city liable for accidents to pedestrians.

**Same—Notice of Defect in Step.—** If such a step is properly constructed in the first instance, the city will not be liable for accidents caused by its getting out of repair, without proof that some of the city officers or agents having charge of such matters had actual notice of the defect, or proof that the defect had existed for such a length of time that the city authorities, in the exercise of reasonable diligence in the supervision of such matters, would or should have discovered it.

Appeal by defendant from an order of the district court for Ramsey county, *Kelly*, J., presiding, refusing a new trial, after a verdict of $1,250 for plaintiff.

*W. P. Murray* and *T. D. O'Brien,* for appellant.

*Davis, Kellogg & Severance,* for respondent.

MITCHELL, J. This was an action to recover for personal injuries caused by the alleged defective and unsafe condition of a sidewalk. At the time of the accident, Decatur street had been graded to the point of its intersection with Preble street, but no further, while Preble street had not been graded at all. Along the graded part of Decatur street a sidewalk had been built, which was some 14 inches higher than the natural surface of the ground at the crossing of Preble and Decatur. A step had been constructed at the end of the walk, about half way between the walk and the ground; the distance from the walk to the step, and from the step to the ground, being each from six and one-half to seven inches. This step had been built in the spring of 1885. On the night of October 1, 1885, the plaintiff, in company with her husband, was walking along this sidewalk, and coming to the end of it at the crossing, when her foot touched the step, it, being loose, "gave," and she fell, and sustained the injuries complained of. As she did not know of the existence of the step, the night being dark and the street unlighted, of course she might have fallen, even if the step had been fast; but all the evidence tends strongly to show that it was the looseness of the step which caused the accident.

The existence of a step at this place, if in proper repair, would be no defect, so as to render the city liable for accidents to pedestrians stepping from the sidewalk on to the street crossing. In any city, and especially in one growing rapidly, where the streets and sidewalks cannot all be put at once on a uniform grade, it may and often must happen that the manner of constructing a sidewalk must be controlled by the necessities of the situation. A step or steps from the walk to the street crossing may, on the whole, be the most suitable plan of which the case will admit. Pedestrians must expect and be on the lookout for steps when they reach a street crossing. This case is not, in this respect, at all like that of *Tabor* v. *City of St. Paul,* 36 Minn. 188, (30 N. W. Rep. 765.) We think the evidence is uncontradicted that this step was properly constructed when put down, being a plank, 12 inches wide, spiked on to stringers, which in turn were spiked to

the walk.    There is some evidence to the effect that, when the step
was examined after the accident, the stringers underneath were found
not entirely parallel with each other; but we can see no natural or
probable connection between this fact and the looseness of the step.
The only reasonable grounds, therefore, upon which the city could be
held liable, must be that it was negligent, either (1) in not lighting
the street, or (2) in permitting the step to become and remain loose.

The defendant assigns as error that the court instructed the jury
that it was the duty of the city to keep its streets reasonably well
lighted at night.    As the complaint alleges that this was the duty of
the city, and the answer expressly admits it, we cannot see that the
defendant can well complain of this instruction.    We may remark,
however, that, although a city has the power to light its streets, it is
under no obligation to do so, unless its charter expressly imposes the
duty.    2 Dill. Mun. Corp. § 1010, and cases cited.    Of course, the
fact as to whether a street was lighted or not may in many cases have
a material bearing upon the question of negligence, for the manifest
reason that a street left in a certain condition may be reasonably safe
if lighted, but dangerous if unlighted.

The court instructed the jury that if they found that the plaintiff
fell, and sustained these injuries, solely by reason of the looseness of
the step, they could not find against the defendant, unless they be-
lieved from the evidence that the city had actual or constructive no-
tice of the defect; that there was no evidence of actual notice to the
city, but that constructive notice might be inferred, if they believed
from the evidence that the defect was a patent one, which ordinary
vigilance could detect, and that it had existed for such a length of
time that notice might be inferred.    The defendant requested the
court to charge that there was no evidence of constructive notice,
which was refused.    In this, we think, the court erred.    The charge
given, so far as it was a general or abstract statement of the law, was
substantially correct; but in this case there was no evidence, either
direct or circumstantial, that we can find, which would tend to charge
the city with notice of the defective condition of the step.    There was
nothing to show that it was loose prior to the night of the accident.
Nobody, not even those living in the vicinity who had occasion to pass

it frequently, had ever observed that it was loose, and there was nothing in its condition or appearance testified to that indicated that it had been so for any length of time. Cities are not insurers of the safety of streets or sidewalks. All that is required of them is reasonable care (1) in the construction, and (2) in the subsequent supervision, of them. If a sidewalk is properly constructed in the first instance, the city would not be liable for accidents caused by its getting out of repair, without proof that some of its officers or agents having charge of such matters had actual notice of the defect, or proof that the defect had existed for such a length of time that the city authorities, if exercising reasonable diligence or supervision, would or should have discovered it. Under the evidence, the court should have granted the instruction, and not left the question of constructive notice to the jury.

Order reversed.